

FILED
U.S. DISTRICT COURT
DISTRICT C: M…LAND

2019 AUG 20  PM 12: 46

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | |
|---|---|---|
| *Paul A. Riley* | *Mailing Address:* | *Office Location:* | *DIRECT: 410-209-4959* |
| *Assistant United States Attorney* | *36 S. Charles Street, 4th Floor* | *36 S. Charles Street, 4th Floor* | *MAIN: 410-209-4800* |
| *Paul.Riley@usdoj.gov* | *Baltimore, MD 21201* | *Baltimore, MD 21201* | |

July 22, 2019

Brendan Hurson, Esq.
Office of the Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

Re:     *United States v. Benjamin Fowlkes*, Criminal No. ELH-19-44

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Benjamin Fowlkes (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 26, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense(s) of Conviction

1.      The Defendant agrees to plead guilty to Count Two of the Indictment, which charges the Defendant with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a), (d). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense(s)

2.      The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland,

Count Two (Armed Bank Robbery)

  a.  First, the Defendant took money from the presence of another, while that money was in the care or custody of a bank;

  b.  Second, such taking was by force and violence and intimidation;

  c.  Third, the deposits of the bank were then insured by the FDIC; and

Rev. August 2018

   d.  Fourth, during the course of the robbery, the Defendant assaulted any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device.

<u>Penalties</u>

3.    The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 2 | 18 U.S.C. §§ 2113(a), (d) | N/A | 25 years | 5 years | $250,000 | $100 |

   a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

Rev. August 2018

   h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

   5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

   6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

Count Two (Armed Bank Robbery)

   a.  **Offense of Conviction:** The offense of conviction is the bank robbery of a branch of a TD Bank that occurred in Baltimore City on November 27, 2018, as described in the Statement of Facts. This Office and the Defendant agree that the applicable base offense level is 20 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a). This Office and the Defendant further agree that there is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken, and the taking of such property was an object of the offense. This Office and the Defendant further agree that there is an increase of 3 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), because a dangerous weapon—an air gun which resembled a semi-automatic firearm—was brandished. This Office and the Defendant further agree that there is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), because a person physically restrained to facilitate commission of the offense or to facilitate escape. This Office and the Defendant further agree that there is an increase of 2 levels, pursuant to U.S.S.G. § 2B3.1(b)(5), because the offense involved carjacking.

   b.  Thus, the offense level for the offense of conviction is 29. -

c.      **Relevant Conduct:** The Statement of Facts specifically establishes the commission of one additional robbery. This Office and the Defendant agree that the guideline calculation for that robbery is as follows:

d.      Count One: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the offense is 20. There is an increase of 3 levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), because a dangerous weapon—an air gun which resembled a semi-automatic firearm—was brandished. Thus, the adjusted offense level is 23.

e.      **Combined Offense Level:** Pursuant to U.S.S.G. § 3D1.4, counting one (1) Unit for the bank robbery of conviction and one half (1/2) Unit for the additional robbery 5 to 8 levels less serious than the group with the highest offense level, results in a total of 1 and a half (1 and 1/2) Units. Thus, the combined offense level is determined by increasing the highest offense level (29) by 1 level. Thus, the combined offense level is 30.

f.      **Career Offender:** This Office and the Defendant further agree that the Defendant is Career Offender pursuant to U.S.S.G. § 4B1.1(a) because (1) the Defendant was at least eighteen years old at the time of the offense of the conviction; (2) the offense of conviction is a felony that is a crime of violence; and (3) the Defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Accordingly, pursuant to U.S.S.G. § 4B1.1(b)(2), the Defendant's criminal history category is VI and the offense level is the greater of 34 or the offense level otherwise applicable—here, 30.

g.      Acceptance of Responsibility: This Office does not oppose a two level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

h.      Accordingly, the final anticipated offense level is 31.

7.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c)(1)(C) Plea

8.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **between 120 months (10 years) to 235 months (19.58 years)** in

the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw the Defendant's plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw the Defendant's plea.

### Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.   -   The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

Rev. August 2018

6

ii.      This Office reserves the right to appeal any sentence below a statutory minimum.

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

a.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in all items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

b.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

c.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

d.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

12.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will

Rev. August 2018

cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

13.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Restitution

14.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation, which the parties stipulate is at least \$5,229. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Court Not a Party

15.     The Court is not a party to this Agreement. Subject to Rule 11(c)(1)(C), the sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or

representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

16.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Paul A. Riley
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/13/19
_____          _____
Date                             Benjamin Fowlkes


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/13/19
_____          _____
Date                             Brendan Hurson, Esq.

## ATTACHMENT A

## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Benjamin Fowlkes, age 34, is a resident of Baltimore, Maryland. On November 26, 2018 and November 27, 2018, Fowlkes robbed a 7-Eleven convenience store and a TD Bank located in Baltimore, Maryland. During each of the robberies, he brandished a chrome air gun, which closely resembled a semi-automatic firearm, demanded cash, ultimately stealing more than $7,250.00.

Each of the robberies is described in further detail below.

### 11/26/18- 7-Eleven

On Monday, November 26, 2018, shortly after 11:00 P.M., Fowlkes entered the 7-Eleven, located at 2701 West Franklin Street, Baltimore, Maryland 21223. He approached the employee counter with what appeared to be a silver semiautomatic handgun—but that was in fact an air gun—displayed at his side and ordered the store employees to open the cash register. The store employees complied, ultimately handing over $150.00. Fowlkes then fled.

### 11/27/18 - TD Bank

The following day, Fowlkes committed another robbery—this time at a TD Bank located at 3603 Boston Street, Baltimore, Maryland 21224.

At approximately 10:00 A.M., Fowlkes entered the bank and asked to open an account. He was then directed to a customer service employee in another part of the bank. He then sat down at a table with a customer service employee. He pulled a yellow folder from a white mesh laundry bag, asked for a pen, and then wrote a demand note on a piece of paper in the folder, which the employee said stated, "give me all the money, don't say a word and don't move." Fowlkes then passed the note to the employee. The employee advised that there was no money in the customer service area. Fowlkes took the note back.

Fowlkes stated that he had a gun and didn't want to hurt anyone and then drew what appeared to be a silver semiautomatic handgun—but that was in fact an air gun—from the white mesh laundry bag. He then told the employee, who was on crutches, to get up slowly. The victim employee complied and walked to the teller area of the bank, in a separate area, to get the money Fowlkes demanded. Fowlkes followed her there. Two other employees were in the teller area of the bank.

While in the teller area, Fowlkes again displayed the silver air gun and demanded money, and demanded one of the employee's car keys. The employee complied and handed over the keys to his car—a Hyundai Sonata. One of the employees handed over $7100 in currency, which Fowlkes placed in the white mesh laundry bag.

Fowlkes then fled in the stolen Hyundai Sonata.

## Arrest of Fowlkes

On November 29, 2018 at approximately 1:15 P.M., a BPD Southwestern District Police Officer was running license plates in the vicinity of the 2800 block of Winchester Street, Baltimore, Maryland. The officer ran a Maryland tag 1CW 7510 on a maroon 2006 Hyundai Sonata. Law enforcement database checks determined the tags to have been reported as stolen and belonging to a Subaru vehicle.

The tags had been reported to the BPD as stolen on November 28, 2018 by N.M. who lived at 1219 Oakhurst Place, Baltimore, Maryland 21216 and with whom Fowlkes had been staying.

The officer requested additional units and subsequently observed the vehicle pull into the Crown gas station in the 1800 block of Bloomingdale Road. The officers approached the driver, later determined to be Fowlkes, and the primary officer asked Fowlkes to get out of the car. Fowlkes did so and he was ultimately arrested in connection with the stolen tags. On Fowlkes' person was $2021.00, which were proceeds from the TD Bank robbery the previous day. And he was wearing the same zip-up hoodie that he wore during the earlier robbery too.

Shortly thereafter, additional checks identified the Hyundai as the vehicle reported as being stolen during the TD Bank robbery on November 27, 2018, discussed above.

The primary officer responded to BPD Citywide Robbery and reviewed bank surveillance images captured during the robbery. The officer immediately recognized the bank robber as Fowlkes, the individual just arrested for the stolen tags. The officer further recognized that Fowlkes was wearing the identical black and gray zip-up hoodie sweatshirt depicted in the bank surveillance images. Fowlkes was subsequently arrested for the robbery of the TD Bank.

## Search Warrant at 1219 Oakhurst And of Fowlkes's Phone

On December 18, 2019, law enforcement executed a federal search and seizure warrant at N.M.'s home, located at 1219 Oakhurst Place in Baltimore. There they seized, among other things, (1) the white mesh laundry bag, yellow folder, and demand note used in connection with the TD Bank robbery; (2) mail addressed to one of the victim bank employee's, which Fowlkes had taken from the Hyundai; and (3) the silver air gun used in connection with the 7-Eleven and TD Bank robberies.

SO STIPULATED:

Paul A. Riley
Assistant United States Attorney

Benjamin Fowlkes
Defendant

Brendan Hurson, Esq.
Counsel for Defendant

Rev. August 2018

11